**SIGNED this 17th day of November, 2008.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

```
                UNITED STATES BANKRUPTCY COURT
                  WESTERN DISTRICT OF TEXAS
                       WACO DIVISION
IN RE:                               )
                                     )
IRENE ELIZABETH HOLLAND              ) CASE NO. 05-62762-FM
              DEBTOR                 ) (Chapter 7)
```

### SUPPLEMENTAL MEMORANDUM OPINION DENYING
### CHAPTER 7 TRUSTEE'S OBJECTION TO EXEMPTIONS

The Court held a hearing on September 10, 2008 regarding the Chapter 7 Trustee's Objection to Exemptions. After the hearing, the Court made certain findings of fact and conclusions of law on the record. The Court took under advisement the ultimate determination of whether the Debtor's failure to initially schedule the assets in question was an intentional knowing act that constituted bad faith and which would preclude the Debtor's attempt to now exempt them. This Memorandum Opinion shall constitute additional findings of fact and conclusions of law to those made on the record at the conclusion of the hearing.

There was, and still is, a great amount of familial animosity

1

surrounding the Debtor's failure to repay a large loan she owed to her mother.  The Debtor has been estranged from her mother and has not talked to her sisters since sometime in 2003 when the Debtor's mother sued her to collect the debt that was owed.  Further, about that same time in 2003, the Debtor's mother made statements to her to the effect that she was dis-inheriting her and that the Debtor should expect nothing on her death as she had already received her inheritance [apparently the debt that she was suing on].

The Court finds it credible that the Debtor believed what her mother had told her; and that, in fact, she believed she was to receive nothing at her mother's death.  This finding is buttressed by the familial animosity that continues to this very day, the active and aggressive litigation her mother brought against her, and her isolation from her sisters.  The Court, therefore, finds that the Debtor believed, as of the date of the Petition, that she had been removed as a beneficiary under the Samuel L. Petro Revocable Trust and the Prudential life insurance policy in question.

At the same time, any inquiry either of her mother or her sister, Juliette Ulrich, around the petition date would have disclosed to her that she still was a beneficiary of both the trust and the life insurance policy.  The Court finds that the failure to schedule the trust and the life insurance policy on her initial schedules was negligent but not willful.  Due to the Debtor's negligence, it was necessary for the Chapter 7 Trustee to further

2

investigate this case and to litigate the exemption claim.  Debtor should be assessed the Trustee's costs and expenses so as not to prejudice her creditors.[1]

Debtor's mother died in February 2007.  Her sister, Juliette Ulrich, is the executrix of her mother's estate.  Although no objection to the exemption, or other pleading in regard thereto, was filed by her mother's estate, it is apparent from the record that someone, apparently the trustee, has taken the position with the Debtor that her creditors are prejudiced by her amended claim of exemptions by reason of the attorney's fees incurred by her mother's estate in finding the existence of the disputed assets. Apparently, Juliette Ulrich paid Jay Gueck, an attorney who has represented her mother's estate in previous unsuccessful §727 and §523 litigation against the Debtor, approximately $30,000.00 to discover the existence of these assets.  However, Ms. Ulrich knew the existence of the assets, and prior to her death, so did the Debtor's and Ms. Ulrich's mother.  But they apparently did not know those assets had not been disclosed by the Debtor in her schedules; a fact that would have been easily ascertained had anybody looked. Why $30,000.00 was paid to Jay Gueck for the purpose of finding out something the parties already knew is beyond the Court.  Such does not qualify as "prejudice" as required by the Fifth Circuit in order to deny the Debtor the right to amend her schedules and claim these assets not initially scheduled as exempt.  In the *Williamson*

---

[1] See, *In re Mathis,* 2007 WL 954756 (Bankr. E.D. Tenn) and cases cited therein.

case, the Fifth Circuit stated, "[t]he law in this Circuit at least since 1969 has been to follow the general rule of liberal amendment of exemption claims." *Matter of Williamson,* 804 F.2d 1355, 1358 (5th Cir. 1986). The Circuit then went on to define the circumstances under which such amendments would be allowed, such primarily being the absence of bad faith or prejudice to the creditors. In this case, there is no bad faith because the Court has found that the Debtor did not believe on the petition date that the assets in question existed.

On the issue of prejudice, the Circuit rejected the argument that prejudice exists because if the amendment is allowed the creditors would not get the money. It stated that the proper question of prejudice does not concern the ultimate outcome of the action but, "the harm to the creditor's litigating posture because of some detrimental reliance on the debtor's initial position." Id.

In the case at bar, the only litigants are the Trustee and the Debtor. The Court has addressed the prejudice to the Trustee as the Estate's representative and is requiring the Debtor to pay Trustee's costs and expenses because of her negligence so that her creditors will not be prejudiced. However, prejudice in this case does not reach so far as to include her mother's estate's lawyers billing her estate approximately $30,000.00 to determine that the assets existed and were unscheduled when the estate's executrix knew of the assets all along and the decedent, Debtor's mother,

4

knew of the assets prior to her death at the time at which she was actively litigating the §727/§523 complaint against her daughter in this very Court. The fact is that those attorneys' fees are excessive and most likely the result of the failure of counsel and his clients to properly communicate. That should not be the problem of the Debtor.

The Debtor did not know that these assets still existed on the petition date in September, 2005. Their existence only came to her knowledge after her mother's death in February 2007. In fact, according to the Amended Motion to Reopen Bankruptcy Case to Revoke Discharge and Dismiss Bankruptcy Case filed by the estate of Debtor's mother, the actual death benefit of $108,310.95 was paid to the Debtor on or about August 6, 2007.

The Debtor thought that based upon previous advice of counsel when filing the bankruptcy that anything she received more than six months after the petition date would be hers, especially proceeds of life insurance. Therefore, she did not immediately communicate these facts to her counsel. There is simply not enough evidence to conclude that the Debtor acted in bad faith.

Debtor actually claimed as exempt her one-quarter interest in the Prudential Life Insurance policy itself. The Debtor valued her one-quarter interest in the policy as of the petition date as $1.00. However, as of the petition date, it is the cash surrender value that existed in the policy which is exempt not the policy

5

itself. The cash surrender value totaled $141,582.19 [2] as of the petition date. The Debtor's one-quarter share of this was $35,395.55 [all four daughters were equal beneficiaries]. It is that to which the Court construes the exemption claim to be made and it is hereby allowed.

The Debtor's mother died in February, 2007. That was the event that gave the Debtor the right to the death proceeds of $108,310.95 which she received on August 6, 2007. All of this occurred more than 180 days after the petition date. The death proceeds are not property of the estate. See 11 U.S.C. §541(a)(5)(C).

The objection by the Trustee to the claim of exemption of the shares of stock in Prudential Insurance Company that the Debtor owned is moot. The Trustee has received the proceeds in the amount of $13,580.40 as the claim of exemption has been abandoned by the Debtor.

An Order of even date denying the Objection to the Exemption of the cash surrender value in the Prudential Life Insurance policy attributable to the Debtor's one-quarter interest therein will be entered.

###

---

[2] See Amended Motion to Reopen Bankruptcy Case and to Revoke Discharge and to Dismiss Case filed by the Estate of Rose Petro (Debtor's mother).